.**JAMES M. WAYNE,**

Elected Judge of Eastern Circuit, November 1822.

THE STATE vs. JOHN ABBOT.

*Habeas Corpus.*

The Judges of the Superior Court in Georgia have a discretionary power, (governed by the cir cumstances of the case ) to bail in all cases whatsoever.

It is not a sufficient ground for bail that the verdict of the Coroner's Jury does not charge the prisoner with felonious homicide, if the affidavits and depositions taken by Coroner and the committing Magistrate, taken in connexion with the verdict, shew that a felony has been committed. or is charged.

And where on such charge, it appears that the prisoner has confessed that the death was caused by him, he will not be bailed. unless there be the existence of some special cause to induce it.

Though the prisoner *on his trial* is entitled to have the *whole* of his confession given in evidence, if any part is offered, yet on applications for *bail*, the exculpatory circumstances stated by him in such confession. will not be sufficient to sustain the application, unless supported by other testimony, or strong intrinsic presumptions of their truth

A person charged with felony cannot make the omission of a public officer to prosecute at the succeeding term, a ground for bail, unless such omission has operated or may operate oppressively.

**By WAYNE, Judge.**

THIS is an application to bail a prisoner who stands committed for homicide, upon the verdict of a Coroner's inquest, and the grounds upon which the exercise of the discretion of the Court is invoked, are : 1st. That the verdict of the Jury does not charge a felonious homicide ; that the affidavit upon which the verdict was returned, and the deposition made before the com- mitting Magistrate by the same person who made the affidavit before the Coroner's Jury, disclose a case of involuntary man- slaughter in the performance of a lawful act, as it is defined in the penal code of Georgia ; and 2dly. that the prosecution has been delayed for such an unreasonable length of time, as to create strong presumptions of the prisoner's innocence.

The case of the *King* vs. *Rudd* (1 *Cowp.* 331) was brought to the notice of the Court, and the doctrines in relation to felonies for which bail will be allowed by the Court of King's Bench, or

by a Judge thereof in vacation, as they are expressed in *Chitty's criminal law*, and in *Hawkins' pleas* of the Crown, were also quoted.   The case of *Rudd* could only have been cited by the prisoner's counsel, to show, that the Court of King's Bench, or a Judge thereof in vaca ion, has a discretionary power to bail in all cases whatsoever.   The same power is claimed in the cases of the *King* vs. *Judd*, (2 Term Reports, 255,) and in the *King* vs. *Marks* and *others*, (3 *East.* 163, 4, 5,) also in many other cases, as well as in the text of *Blackstone*, vol. 4th, 299, and is a settled point; nor will it be denied that a Judge of the Superi r Court in Georgia, may exercise all the powers in relation to bail which appertain to the Court of Kings' Bench in England or to a Judge thereof in vacation.   The other authorities alluded to in the discussion were Lord *Mohun's* case, (1 *Salk*, 104,) the *King* vs. *Dalton*, (2 *Strange*, 911,) and the *King* vs. *Magrath*, (2 *Stra.* 1242.)   Lord *Mohun's* case showed that Lord *Holt* at Chambers did exercise the discretionary power of admitting a prisoner to bail who had been found guilty of murder by a Coroner's inquest, after his Lordship had looked into the depositions upon which the Coroner had proceeded, but the only inference which can be correctly deduced from the exercise of the power in that case, is, that a verdict of murder returned by a Coroner's Inquest, *will not, of itself,* preclude the person cha:ged from being bailed, and it reminds us of the language of *Blackstone*, 4th vol. 299, " that there are cases though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offence.   The cases of the *King* vs. *Dalton* and the *King* vs. *Magrath*, show that upon the return of Coroner's inquest of manslaughter, the prisoner may be bailed, but from neither of these authorities can any rule be collected which would be applicable to all cases of manslaughter, other than this, that a Judge who awards the writ of *habeas corpus* will look into the depositions upon which the verdict of the jury has been returned, and into such examinations as may be taken from the committing

magistrate for the purpose of ascertaing whether they furnish such grounds as will enable him to exercise his discretionary power to bail, for though in *Dalton's* case, Lord *Raymond* said, if the depositions shew that the offence was murder, he would not bail, *but if it only amounted to manslaughter, he would bail*, yet his decision must be viewed and weighed in reference to the age of the party in that case charged with the homicide, the probability arising from his youth, that bail would secure his forthcoming to stand his trial for manslaughter, and to the circumstances attending the homicide as they were detailed in the depositions. The prisoner in that case was a boy at Eton, who had unfortunately killed his schoolfellow. Nor will the force of these remarks in relation to the case of *Dalton*, be at all im-impaired by its having been cited by Chief Justice *Spencer* in *Goodwin's* case 188, as one of those instances in which a person charged with manslaughter has been bailed, "when there has been no presumption of innocence," for in the ensuing paragraph the Chief Justice inumerates some of the grounds which must enter into the consideration of the question of bail in felonies, and declares, " on admitting to bail, regard must be had to the probable guilt of the party." The cases have been more fully remarked upon than they would otherwise have been, to prevent any misunderstanding of my views of the law in relation to bail in cases of manslaughter. I acknowledge them as authorities so far as that persons charged with manslaughter by the verdict of a Coroner's Inquest, may be bailed by the Court of King's Bench, or by a Judge thereof in vacation. But I cannot admit that this discretionary power of the King's Bench or its Judges " to bail in all cases whatsoever" exists, independently of all rule, or that it is ever discreetly exercised in cases of felonious homicide upon an inquiry into the depositions alone, unless the depositions create some doubt, either as to the case not being comprehended within the law, which upon the trial of the prisoner will have to govern the verdict of the jury, or some doubt, as to the facts upon

which the accusation rests. It is proper here to observe also, that this discretionary power in the Judges of the King's Bench to bail in cases of manslaughter, upon an examination into the depositions taken by the Coroner, has been cautiously used, for besides the cases commented upon in this decision, the whole range of English and American Reporters will furnish no other. It remains now for me to inquire whether the case of the prisoner can be brought within either of the restrictions which control the exercise of the discretionary power to bail, and in determining this point, it is not necessary for me to declare the prisoner to be guilty of any offence, for the examination of the depositions is exclusively an examination of ex parte testimony, and if the conclusion shall be unfavorable to the application for bail the decision of the Court will amount to no more than this, that the ex parte testimony furnishes no facts or grounds to warrant the exercise of the descretion possessed by the Court to admit to bail.

The inquest states that the said *Ezckiel* alias *Isaac* came to his death by a shot, (as expressed in the evidence of Dr. *Feurth*,) in the left side of the          , from a gun by his master *John Abbot*, jr., in Effingham County." This verdict, it is true, does not charge the prisoner with a felonious homicide, and if it stood alone as the ground of his commitment, he would be entitled to bail. But the verdict of the jury must be considered in connexion with the affidavit and deposition which have been put before me, and the informal indefiniteness of the former will be no ground to admit the prisoner to bail, if from the latter it can be sufficiently collected that a felony has been committed, or is charged against him. This is the doctrine in relation to commitments for felony in which the felony is not charged, and the cases are analogous. (2d *Term*, Rep. 233, 3d *East.* 157.) As to the depositions in this case, they contain the voluntary confession of the prisoner to the physician who was called to attend the deceased, narrating at length the causes which impelled him to the deed. If upon such testimony the Grand

Jury shall return a true bill, the prisoner upon his trial will be entitled to the full benefit of the whole confession as evidence. But it would be going too far, upon an application for bail in a case of imputed felonious homicide, to permit the exculpatory circumstances related by the person confessing the homicide, unsupported by any other testimony, or by strong presumptions of their truth, arising from the confession itself, to be a sufficient ground to bail. The utmost benefit which a prisoner can claim from his confession, is, that upon trial he may have the whole of it in evidence, the favorable as well as the unfavorable part of it, and in this way, it is that one may be said in some degree to become a witness for himself. This is a humane doctrine; it has for its basis the soundest principles of reason and morality. But it would be a perversion of it, to permit it to become the means, by which a person might elude a trial even for a minor offence, or to allow it to be of itself a sufficient reason, to exempt a party from the imprisonment to which persons accused of felonious homicide, are ordinarily subjected. The doctrine in relation to the allowance of bail in case of felony upon an examination of depositions is well expressed in *Chitty* 99, when he says, after speaking of the plenary powers of the Court of King's Bench, " It is not usual for that Court to bail in case of felony, unless, when in consequence of the defects of the commitment, and of the examination and depositions, it appears doubtful whether any offence has becen committed. And *Hawkins* B. 2d, Ch. 15, sec. 40 and 80, not confining himself to an examination of the depositions, lays down the law to be, that if it stand indifferent, whether a person charged with a felony is guilty or not, he ought to be bailed, and that even in capital cases where there is any circumstance to induce the Court to suppose he may be innocent, they will bail, and the Judges will in general exercise the power of bailing in favor of a prisoner in any case not capital, though they will not exercise it when the prisoner is notoriously guilty by his own confession, or otherwise without the existence of some special cause to induce

[State, vs. Abbot.]

it." Such are the principles which controlled the decision in this case.

As to the second point made by the prisoner's counsel, that the prosecution has been delayed such an immeasurable length of time, as to create strong presumption of his innocence, it is remarked, that the entire innocence of the accused cannot be meant by the counsel, as he states the case in his first ground, to be one of involuntary manslaughter in the performance of a lawful act. The facts however in this case are, that the inquest was held on the 2d of May last; in a few days after the verdict of the jury was handed to the *Sol. Gen.* The prisoner was not then in custody, nor was he taken until the          instant, which was a day or two after a Capias had been issued by this Court for his apprehension upon the application of the *Sol. Gen.* The Solicitor has ingeniously stated his reasons for having omitted to prosecute the prisoner at the last Court held in *Chatham* County. The time since the verdict of the Coroner's inquest was given, is too short to give to the delay that aspect from which favorable presumptions of innocence can be raised, and it has been productive of no personal inconvenience to the prisoner as he has been at large. A person charged with a felony may make the omission of a public officer to prosecute, a good claim for bail, if the omission is made the means of oppression, or oppression shall be the consequence of it: as when a party is in custody, and the prosecuting officer or committing Magistrate permits a term of a Court in which the prisoners could have been tried, to pass without instituting proceedings against him. Such were the considerations which governed the case of *Fitzpatrick*, reported in 1st *Salkeld*, 102. There has been no oppression in this case, nor has the prisoner been in custody to bring him within the operation of the last principle stated. The application in this case for bail is refused, and the prisoner must be remanded.